Yaman Salahi (SBN 288752)
yaman@salahilaw.com
Nicole Cabañez (*pro hac vice*)
nicolec@salahilaw.com
**SALAHI PC**
505 Montgomery St., 11th Floor
San Francisco, California 94111
Tel: (415) 236-2352

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **HAMAD SAYAD,** | Case No. 3:25-cv-4679-TSH |
| *Plaintiff,* | |
| v. | **PLAINTIFF'S OPPOSITION TO** |
| | **MOTION TO TRANSFER VENUE** |
| **UNITED STATES OF AMERICA,** | |
| *Defendant.* | **Date:** October 23, 2025 |
| | **Time:** 10:00 a.m. |
| | **Judge:** The Honorable Thomas S. Hixson |
| | **Location:** 450 Golden Gate Avenue |
| | Courtroom E, 15th Floor |

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................1

II.    STATEMENT OF ISSUES TO BE DECIDED ...................................................1

III.   FACTUAL BACKGROUND.................................................................................1

IV.    LEGAL STANDARD ...........................................................................................2

V.     ARGUMENT.........................................................................................................3

     A.   The Convenience Factors Either Weigh Against Transfer, or Are Neutral.... 4

         1.   Transfer would severely inhibit, if not functionally prohibit, Plaintiff's ability to bring this case. ............................................................................. 4

         2.   Advancements in electronic document discovery and videoconferencing minimize the burden, and expense, associated with out of state discovery.8

     B.   The Convenience of Witnesses Favors Plaintiff or Is Neutral ......................... 9

     C.   The Public Interest Factors Are Largely Neutral. ........................................... 12

         1.   This District's interest in the controversy is at least as significant as Arizona's.................................................................................................... 12

         2.   This Court is more than capable of applying out-of-state tort law. .......... 13

     D.   Where the "Relevant Agreements Were Negotiated and Executed" is Not Relevant Here, and Should be Neutral. .............................................................. 13

VI.    CONCLUSION ...................................................................................................13

**TABLE OF AUTHORITIES**

**Cases**

*A.F.P. v. United States*,
No. 21-cv-00780-DAD-EPG, 2022 WL 2704570 (E.D. Cal. July 12, 2022)..... 5, 9, 12, 13

*Abeyta v. DMCG, Inc.*,
No. 22-cv-07089-SI, 2023 WL 2918741 (N.D. Cal. Apr. 12, 2023) ................................. 9

*Adidas Am., Inc. v. Cougar Sport, Inc.*,
169 F. Supp. 3d 1079 (D. Or. 2016) ................................................................. 4

*Alvarado v. United States*,
No. 16-cv-5028, 2017 WL 2303758 (D.N.J. May 25, 2017).................................. 7, 9, 12

*AV Media, Pte, Ltd. v. OmniMount Sys., Inc.*,
No. 06-cv-3805 JSW, 2006 WL 2850054 (N.D. Cal. Oct. 5, 2006).................................. 8

*Barroca v. United States*,
No. 19-cv-00699-MMC, 2019 WL 5722383 (N.D. Cal. Nov. 5, 2019) ............................ 8

*Beverage Mgmt. Sys., Inc. v. Ott*,
No. 3:12-cv-2126-SI, 2013 WL 1296083 (D. Or. Mar. 26, 2013)..................................... 7

*Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs.*,
No. 17-cv-6491-FMO, 2018 WL 7297829 (C.D. Cal. Sept. 30, 2018) ...................... 11, 12

*Commodity Futures Trading Comm'n v. Savage*,
611 F.2d 270 (9th Cir. 1979) ......................................................................... 3

*Doe v. Epic Games, Inc.*,
435 F. Supp. 3d 1024 (N.D. Cal. 2020) ........................................................... 4

*E.L.A. v. United States*,
No. 20-cv-1524-RAJ, 2022 WL 2046135 (W.D. Wash. June 3, 2022)............................ 6

*Eduardo I.T. v. United States*,
No. 22-cv-05333-DMR, 2023 WL 10354060 (N.D. Cal. Feb. 24, 2023)................... 5, 7, 8

*Fabus Corp. v. Asiana Exp. Corp.*,
No. 00-cv-3172 PJH, 2001 WL 253185 (N.D. Cal. Mar. 5, 2001).................................... 8

*Ferrick v. Spotify USA Inc.*,
No. 15-cv-09929-BRO-RAOx, 2016 WL 11623778 (C.D. Cal. Oct. 26, 2016) ............... 5

*Getz v. Boeing Co.*,
    547 F. Supp. 2d 1080 (N.D. Cal. 2008) ........................................................................ 3, 9

*Grossman v. Johnson & Johnson*,
    No. 14-cv-03557-VC, 2015 WL 1743116 (N.D. Cal. Apr. 13, 2015) ............................... 8

*Gutta v. Renaud*,
    No. 20-cv-06579-DMR, 2021 WL 533757 (N.D. Cal. Feb. 12, 2021) .............................. 5

*H.L. v. Wal-Mart Stores, Inc.*,
    No. 15-cv-1056, 2015 WL 12743600 (C.D. Cal. Sept. 9, 2015) ....................................... 3

*Hinestroza v. United States*,
    No. 23-cv-2026-MWF-MRWx, 2023 WL 6787769 (C.D. Cal. Sept. 6, 2023) .......... 12, 13

*In re Air Crash Over the Midatlantic*,
    792 F. Supp. 2d 1090 (N.D. Cal. 2011) .......................................................................... 3

*Jones v. GNC Franchising, Inc.*,
    211 F.3d 495 (9th Cir. 2000) ................................................................................. 3, 6, 13

*Koval v. United States*,
    No. 13-cv-1630-HRH, 2013 WL 6385595 (D. Ariz. Dec. 6, 2013) .................................. 8

*Lofton v. Verizon Wireless (VAW) LLC*,
    No. 13-cv-05665-YGR-JSC, 2014 WL 10965261 (N.D. Cal. Nov. 25, 2024) ................. 10

*Nunez Euceda v. United States*,
    No. 20-cv-10793-VAP-GJSx, 2021 WL 4895748 (C.D. Cal. Apr. 27, 2021) .................... 5

*Panavision Int'l, L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998) ....................................................................................... 9

*Park v. Dole Fresh Vegetables, Inc.*,
    964 F. Supp. 2d 1088 (N.D. Cal. 2013) .......................................................................... 2

*Perez v. Shippers Transp. Express, Inc.*,
    No. 13-cv-04255-BRO, 2014 WL 12597141 (C.D. Cal. July 8, 2014) ........................... 11

*Pralinsky v. Mutual of Omaha Ins.*,
    No. 08-cv-03191 MHP, 2008 WL 4532563 (N.D. Cal. Oct. 9, 2008) ............................... 3

*Ramondetta v. Konami*,
    No. 08-cv-1002-JSW, 2008 WL 11396774 (N.D. Cal. May 19, 2008) ......................... 2, 4

*Smith v. Corizon Health, Inc.*,
    No. 16-cv-00517-WHA, 2016 WL 1275514 (N.D. Cal. Apr. 1, 2016) ............................. 8

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988) ................................................................................................................... 3

*Sugarman v. Muddy Waters Cap. LLC*,
    No. 19-cv-04248-MMC, 2021 WL 583220 (N.D. Cal. Feb. 16, 2021) ........................... 12

*United States v. Perea-Rey*,
    680 F.3d 1179 (9th Cir. 2012) ...................................................................................... 10

*Visier, Inc. v. iCIMS, Inc.*,
    No. 24-cv-07544-SVK, 2025 WL 589036 (N.D. Cal. Feb. 24, 2025) .............................. 11

*Wilbur P.G. v. United States*,
    No. 4:21-cv-04457-KAW, 2022 WL 3024319 (N.D. Cal. May 10, 2022) ......... 5, 9, 11, 13

*Williams v. Robert Half Int'l Inc.*,
    No. 20-cv-03989-KAW, 2020 WL 12655622 (N.D. Cal. Sept. 18, 2020) ........................ 8

*YZ Productions, Inc. v. Teezily Inc.*,
    No. 2:24-cv-00223-MRA-SK, 2025 WL 1144825 (C.D. Cal. Mar. 28, 2025) ................ 10

**Statutes**

28 U.S.C. § 1402(b) ............................................................................................................. 2, 4

28 U.S.C. § 1404(a) ................................................................................................................. 2

28 U.S.C. § 2402 ...................................................................................................................... 9

28 U.S.C. § 2678 ...................................................................................................................... 7

## I.      INTRODUCTION

Plaintiff Hamad Sayad endured awful mistreatment and abuse while he was in Immigration and Customs Enforcement ("ICE") custody and suffers from numerous physical and psychological injuries as a result.  Nonetheless, he has made numerous steps towards healing and building a life for himself.  Those steps include moving to San Leandro, California, building a community for himself there, finding support to deal with his numerous physical and linguistic limitations, and pursuing justice for the mistreatment he endured while he was detained.  Transferring this action to Arizona would significantly hinder his ability to prosecute this action, functionally robbing him of his ability to seek redress for his injuries, and force him to relive some of his most traumatic memories.  Indeed, in its motion to transfer venue, the Government fails to acknowledge Ninth Circuit case law demonstrating that resident plaintiffs, particularly those with limited means, should receive substantial deference in their selection of a forum.  The Government fails to meet its high burden of showing that inconvenience and justice favor disrupting this norm.  To the contrary, the interests of justice require that this action proceed in this District.

## II.     STATEMENT OF ISSUES TO BE DECIDED

Whether this action should proceed in this District, where Plaintiff lives, or be transferred to Arizona under 28 U.S.C. §1404(a).

## III.    FACTUAL BACKGROUND

Plaintiff Hamad Sayad fled persecution in his home country of Yemen to pursue a better life for himself in the United States.  Upon entering the United States, he was placed in ICE detention until May 6, 2022, while his applications for asylum and Temporary Protected Status were pending.  While he was in ICE custody, Plaintiff was bullied and mistreated on account of his religion, prompting a several-month hunger strike.  Compl. ¶¶ 2-3.  ICE failed to ensure that Plaintiff was treated with the dignity and care that he deserved, attempting a dangerous and unnecessary force-feeding procedure that exceeded the scope of a court order, and violated national detention standards.  Compl. ¶¶ 75-78, 97-99.

When he was finally released from immigration custody on bond, Plaintiff was left to fend for himself as a recently disabled, profoundly traumatized, monolingual Arabic speaker with limited earning potential.  He suffers from severe nerve pain, rheumatism, lower back pain, chest pain, chronic insomnia, difficulty breathing, and has almost no use of his right hand and arm following his mistreatment in ICE detention.  Pursuing a home where he would ultimately feel safe from further ICE abuses, Plaintiff decided he would move to California, after briefly and unsuccessfully attempting to settle in St. Louis, Missouri.  Sayad Decl. ¶¶ 8-9.

Plaintiff ultimately moved to San Leandro, California in May 2025, where he intends to stay indefinitely.  Sayad Decl. ¶ 10.  Since relocating, he has signed a one-year lease, has started working as a driver delivering groceries for Walmart customers, and has obtained health insurance with the goal of ultimately seeking treatment for his various physical and psychological injuries.  *Id.* ¶ 11.  Since learning about Defendant's motion to transfer his case from California to Arizona, Mr. Sayad has experienced much stress and anxiety, particularly about the prospect of being forced to return to the place he associates with severe physical abuse, psychological trauma, and discriminatory treatment at the hands of ICE.  *Id.* ¶ 15.  In addition to psychological harm, requiring him to travel to Arizona for legal proceedings would impose undue economic hardship on him, as he does not benefit from paid time off or have sufficient economic means at his disposal.  *Id.* ¶ 16.

## IV.    LEGAL STANDARD

The Federal Tort Claims Act provides that a plaintiff may bring a claim either "in the judicial district where the claimant resides or where the act or omission occurred." 28 U.S.C. § 1402(b).  "In general, the Court affords a plaintiff's chosen forum great weight." *Ramondetta v. Konami*, No. 08-cv-1002-JSW, 2008 WL 11396774, at *4 (N.D. Cal. May 19, 2008).  Nonetheless, courts employ a two-step analysis in determining whether to transfer an action to another district pursuant to 28 U.S.C. § 1404(a).  First, the Court must consider whether the action could have initially been brought in the forum to which the moving party seeks to transfer the case. *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1093 (N.D. Cal. 2013).

Once the moving party makes this showing, the Court has discretion to consider motions to transfer based on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted).

Section 1404(a) identifies three factors that a court may consider in making this determination: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interest of justice, bearing in mind that "[a] plaintiff's choice of forum will not be disturbed unless the private and public interest factors strongly favor trial in the foreign [forum]." *In re Air Crash Over the Midatlantic*, 792 F. Supp. 2d 1090, 1094 (N.D. Cal. 2011). In making this assessment courts in the Ninth Circuit also sometimes consider additional factors, such as:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). "The burden is on the defendant to show that the convenience of parties and witnesses and the interest of justice require transfer to another district." *Getz v. Boeing Co.*, 547 F. Supp. 2d 1080, 1082 (N.D. Cal. 2008). (citing *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)).

Importantly, a court "will not grant a transfer simply because the transferee court is more convenient for defendants. If the transfer would merely switch the inconvenience from defendant to plaintiff, the transfer should not be allowed." *H.L. v. Wal-Mart Stores, Inc.*, No. 15-cv-1056, 2015 WL 12743600, at *4 (C.D. Cal. Sept. 9, 2015). Similarly, "convenience of counsel is not considered in ruling on a section 1404(a) transfer motion." *Pralinsky v. Mutual of Omaha Ins.*, No. 08-cv-03191 MHP, 2008 WL 4532563, at *2 (N.D. Cal. Oct. 9, 2008).

## V.     ARGUMENT

It is undisputed that this action could have been brought either in this District, where Plaintiff lives, or in Arizona, where some, but not all, of the acts or omissions arise. 28 U.S.C. §

1402(b). However, the convenience of the parties, convenience of Plaintiff's witnesses, and the interests of justice counsel against transferring this case to the District of Arizona. Most importantly, transferring this case to Arizona would make it extremely difficult for Mr. Sayad to continue to prosecute this case. Mr. Sayad is low-income, disabled, and profoundly traumatized from his experience in immigration detention in Arizona. Mr. Sayad also intends to call witnesses to attest to his ongoing physical and psychological injuries, all of whom reside in this District. Transferring the action to Arizona would thus only shift the inconvenience from one group of nonparty witnesses to another. Finally, the interests of justice favor trying this case in Plaintiff's home district, as this case addresses matters of national concern, such as the mistreatment of individuals in federal detention facilities, by federal officers, in violation of federal detention standards.

> **A.      The Convenience Factors Either Weigh Against Transfer, or Are Neutral**
>
>> 1.      <u>Transfer would severely inhibit, if not functionally prohibit, Plaintiff's ability to bring this case</u>.

"In general, the Court affords a plaintiff's chosen forum great weight." *Ramondetta*, 2008 WL 11396774, at *4. Exceptions to this rule are limited in the Ninth Circuit, such as where the parties have agreed to a forum-selection clause, in a class action, or where plaintiffs are forum shopping. *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1040 n.11, 1041 (N.D. Cal. 2020). None of these fact patterns are relevant in the present dispute. What's more, special deference is usually afforded to plaintiffs that bring claims in the districts where they reside, precisely because it would be unfair to require a plaintiff to travel to a far-away district to obtain relief for their injuries. *See, e.g.*, *Adidas Am., Inc. v. Cougar Sport, Inc.*, 169 F. Supp. 3d 1079, 1096 (D. Or. 2016) ("[P]laintiff's choice of forum is especially given deference where the plaintiff is a resident of the forum in which the action is brought").

Deference is especially warranted in cases where the relative means between the parties is stark, such as when a low-income individual sues the federal government. "[W]here a disparity between the parties exists, such as an individual plaintiff suing a large corporation, the

court may also consider the relative means of the parties in determining whether to transfer." *Ferrick v. Spotify USA Inc.*, No. 15-cv-09929-BRO-RAOx, 2016 WL 11623778, at *5 (C.D. Cal. Oct. 26, 2016) (citation omitted).  Here, Plaintiff is low-income, earning approximately $500 to $600 per week as a grocery delivery driver, with meager savings.  Sayad Decl. ¶ 12.  He does not receive paid time off or paid vacation days at work, meaning taking time off work requires foregoing income for those days, in addition to paying any expenses associated with travel.  *Id.* It would be extremely difficult for him to afford a single trip to Arizona, both in terms of lost income and the expense of paying for travel and lodging to testify.  *Id.* ¶ 16.  The federal government, on the other hand, is "well equipped to litigate elsewhere."  *Gutta v. Renaud*, No. 20-cv-06579-DMR, 2021 WL 533757, at *8 (N.D. Cal. Feb. 12, 2021) (holding that USCIS did not meet its burden to transfer venue).

Indeed, courts adjudicating FTCA cases brought by immigrants harmed while in civil immigration detention have sometimes found inconvenience to the plaintiff sufficient to deny a transfer motion, without considering the remaining factors.  *See*, *e.g.*, *Nunez Euceda v. United States*, No. 20-cv-10793-VAP-GJSx, 2021 WL 4895748, at *4 (C.D. Cal. Apr. 27, 2021).  And even in cases that have discussed other §1404(a) factors, courts have nonetheless declined to transfer venue in similar circumstances.  For example, in *Eduardo I.T. v. United States*, the court placed tremendous emphasis on the fact that the plaintiffs were "low-income asylum seekers" that resided in this District, that transferring the action to Arizona would "effectively shut them out of court," and that the Government "does not face this problem."  No. 22-cv-05333-DMR, 2023 WL 10354060, at *5 (N.D. Cal. Feb. 24, 2023) (declining motion to transfer FTCA case). *See also Wilbur P.G. v. United States*, No. 4:21-cv-04457-KAW, 2022 WL 3024319, at *3-4 (N.D. Cal. May 10, 2022) (deferring to plaintiff's choice of venue because they reside in the forum district); *A.F.P. v. United States*, No. 21-cv-00780-DAD-EPG, 2022 WL 2704570, at *5-6 (E.D. Cal. July 12, 2022) (finding significant disparity between the parties' means weighed strongly against transfer); *E.L.A. v. United States*, No. 20-cv-1524-RAJ, 2022 WL 2046135, *5

(W.D. Wash. June 3, 2022) (finding it would not be in the interest of justice to transfer the case to a forum where the plaintiffs would be unable to litigate).

The Government cites to two cases, decided nearly twenty years ago, for the proposition that litigating a case is generally less expensive when trial is located near the most witnesses, citing expenses relating to "site visits" and "meeting with witnesses" as entailing "substantial costs." Dkt. 11 at 18. However, the standard in deciding a motion to transfer requires an "individualized, case-by-case consideration of convenience and fairness." *Jones*, 211 F.3d at 498. In this case, a transfer to Arizona would likely be more expensive and logistically challenging for Plaintiff to litigate, as he and his attorneys reside in California. While it is possible that his attorneys could seek Pro Hac Vice admission in Arizona, it is unlikely that they would be able to control whether they would be permitted to make remote court appearances as a matter of course, creating the opportunity for high, fixed travel costs. By contrast, his attorneys are much better positioned to coordinate, consolidate, and minimize discretionary travel to Arizona for depositions, site visits, and other pre-trial matters.

The Government's assumptions behind Plaintiff's ability to secure litigation and trial counsel in Arizona, by alluding to representation he obtained in another matter years ago, are also incorrect. Dkt. 11 at 19. A large law firm's decision to represent an individual in asylum proceedings does not extend to representation in an FTCA case years later. It is well-known that large law firms offer pro bono representation in immigration proceedings partly because such matters require a relatively modest commitment of time and are easier to manage with other commitments, unlike litigation which often involves multiple hearings, extensive motion practice, depositions, discovery, and other expensive and time-consuming tasks.[1] In addition, Plaintiff has limited English proficiency, and as articulated *supra*, limited means. Effective

---

[1] *See, e.g.*, Lawyers Committee for Civil Rights of the San Francisco Bay Area, *Pro Bono Volunteer Opportunities*, https://perma.cc/QWW2-T9H4 (last visited Sept. 11, 2025) (noting that, for representation in asylum proceedings, pro bono attorneys can "spend an average of 30 hours per year for 3 years on each case"); Abigail Adcox, *What Attracts Big Law to Immigration Pro Bono Work?*, Law.com (July 9, 2024), https://perma.cc/7QJ9-58EE (noting that law firms take on immigration cases in part because of "the flexibility to fit the work within the demands of lawyers' billable work").

representation requires the ability to communicate with him in his native language and accommodate his budget. Notwithstanding his success in obtaining pro bono representation for his immigration matter, Plaintiff was unable to locate counsel in Arizona to prosecute his claims. Sayad Decl. ¶ 13.[2]

Finally, a transfer to Arizona is likely to cause Plaintiff to suffer psychological and physical harm. Since his release from detention, and the events that are alleged in the complaint, Plaintiff has suffered from profound emotional distress with physical symptoms, like chest pain, shortness of breath, and insomnia. Compl. ¶¶ 104, 130. He fears that if he were to revisit the state where he was injured to testify about the circumstances leading to his injuries, he would relive that trauma. Sayad Decl. ¶ 15. Plaintiff does not feel the same way about potentially testifying in this District, where he lives and where he feels safer, and is pursuing medical treatment. *Id.* ¶ 14. *See, e.g., Alvarado v. United States*, No. 16-cv-5028, 2017 WL 2303758, at *6 (D.N.J. May 25, 2017) (declining to transfer action when transfer would require the plaintiff to "return to [the cite of the alleged mistreatment]" and likely "exacerbate" the plaintiff's psychological injuries). And even without this risk of worsened health outcomes, "[c]onsideration of serious health issues is appropriate in a motion to transfer venue." *Beverage Mgmt. Sys., Inc. v. Ott*, No. 3:12-cv-2126-SI, 2013 WL 1296083, at *9 (D. Or. Mar. 26, 2013) (collecting cases).

The Government cites several cases for the proposition that Plaintiff's choice of forum should be accorded less weight because the abuse alleged in the complaint took place in Arizona. *See* Dkt. 11 at 19-21. However, in doing so, the Government ignores relevant caselaw that affords weight to plaintiffs who allege that they experienced consequent emotional distress in their chosen forum district. *E.g., Eduardo I.T.*, 2023 WL 10354060, at *4 (finding allegations of

---

[2] Many plaintiff's lawyers are reluctant to take on FTCA litigation, no matter the merits, because the statutory cap on attorney's fees of 25%, *see* 28 U.S.C. § 2678, is far lower than market contingency rates of 33-40% for comparable and less complex litigation against private actors. American Bar Association, *Fees and Expenses*, Americanbar.org, (Dec. 03, 2020), https://perma.cc/5YYB-CNAB. Unlike civil rights laws, the FTCA does not provide for statutory fee shifting. Transferring Plaintiff's case to Arizona will not only cause hardship to Plaintiff but may also chill similar litigation by driving up costs for injured parties.

emotional distress in the forum district were sufficient to counter Government's argument that no operative facts occurred in the forum district).  What's more, the Government cites to cases which are inapposite, including cases where the plaintiff did not even live in the forum district, or where the plaintiff presented no evidence as to the hardship transfer might cause.  *Grossman v. Johnson & Johnson*, No. 14-cv-03557-VC, 2015 WL 1743116, *1 (N.D. Cal. Apr. 13, 2015); *Barroca v. United States*, No. 19-cv-00699-MMC, 2019 WL 5722383, at *3 (N.D. Cal. Nov. 5, 2019); *Fabus Corp. v. Asiana Exp. Corp.*, No. 00-cv-3172 PJH, 2001 WL 253185, at *2 (N.D. Cal. Mar. 5, 2001) (plaintiffs were corporations headquartered in either transferee district or Korea); *AV Media, Pte, Ltd. v. OmniMount Sys., Inc.*, No. 06-cv-3805 JSW, 2006 WL 2850054, *3 (N.D. Cal. Oct. 5, 2006) (plaintiffs were all businesses based in Asia); *Smith v. Corizon Health, Inc.*, No. 16-cv-00517-WHA, 2016 WL 1275514, at *2 (N.D. Cal. Apr. 1, 2016) (plaintiff did not provide "any sworn record demonstrating how a short stay in [the transferee district] would actually affect him"); *see Koval v. United States*, No. 13-cv-1630-HRH, 2013 WL 6385595 (D. Ariz. Dec. 6, 2013) (no suggestion of financial or psychological hardship to plaintiff, who was a former federal police officer who alleged false arrest at a military base when he was terminated).

        2.    <u>Advancements in electronic document discovery and videoconferencing minimize the burden, and expense, associated with out of state discovery.</u>

The Government places an undue and outdated emphasis on the proximity to records and other sources of proof.  While two of the three[3] detention centers at issue in this case are located in Arizona, "in the digital age, the access to records is neutral given the portability of documents." *Williams v. Robert Half Int'l Inc.*, No. 20-cv-03989-KAW, 2020 WL 12655622, at *3 (N.D. Cal. Sept. 18, 2020).  Indeed, in the analogous FTCA cases cited *supra*, many of the decisions found proximity to documentary evidence to be neutral, weighing neither for nor against transfer.  *See, e.g.*, *Eduardo I.T.*, 2023 WL 10354060, at *5 (citing *Panavision Int'l, L.P.*

---

[3] Plaintiff's transfer to Krome Detention Center in Miami is relevant to this case because that is where he finally received appropriate care and was able to break his hunger strike permanently. Compl. ¶ 61.

*v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998)); *Wilbur P.G.*, 2022 WL 3024319, at *4; *A.F.P.*, 2022 WL 2704570, at *7; *Alvarado*, 2017 WL 2303758, at *7 ("the location of books and records is not decisive in this matter, as the Government concedes that any documentary evidence related to the matter can be reproduced and transmitted electronically to this Court"). The Government's own submissions here prove the point—by submitting declarations from ICE employees in both Phoenix and Washington, D.C., the Government demonstrates that it is more than capable of coordinating its defense across state lines, without needing to travel across the country to do so.

Further, it is not uncommon for depositions to take place virtually or be recorded via video. Plaintiff's counsel intends to work with the Government to assess the feasibility of remote depositions whenever it would be practicable to do so. Courts in this District have found these types of assurances sufficient to find this factor neutral. *Abeyta v. DMCG, Inc.*, No. 22-cv-07089-SI, 2023 WL 2918741, at *6 (N.D. Cal. Apr. 12, 2023). The same can be said of trial testimony, because this case will be tried by the Court, not a jury. *See* 28 U.S.C. § 2402.

**B.     The Convenience of Witnesses Favors Plaintiff or Is Neutral**

Plaintiff is likely to call, and the Government is likely to seek discovery from, several California-based witnesses, including mental health and medical professionals, which have provided treatment to Plaintiff since his release. Plaintiff himself also intends to testify and attend trial. Sayad Decl. ¶ 16. The Government does not attempt to explain how transfer would be more convenient to those witnesses, only seeking to convenience itself at Plaintiff's expense and that of Plaintiff's local witnesses.

Further, many of the critical allegations in the complaint concern actions by ICE officials, employees, and independent contractors. As to the Government's employees, courts "discount[] any inconvenience to the parties' employees, whom the parties can compel to testify." *Getz*, 547 F. Supp. 2d at 1084. In a similar vein, both facilities at issue in this case are owned and operated by CoreCivic, an entity that is currently under contract with ICE to provide detention services

around the country, including in California.[4]  This means that much of the information in CoreCivic's possession should also be within the Government's possession, custody, or control, given that CoreCivic likely has contractual obligations to the Government to facilitate its access to information and to cooperate in related civil litigation.  *See*, *e.g.*, *Lofton v. Verizon Wireless (VAW) LLC*, No. 13-cv-05665-YGR-JSC, 2014 WL 10965261, at \*2 (N.D. Cal. Nov. 25, 2024) (a party has "control" over a third-party's documents when a contract "provides a legal right to access" them).  To the extent such materials are outside of the Government's possession, custody, or control, CoreCivic maintains a registered agent in this state and is subject to service of process and discovery subpoenas in this state.  *See* n. 4, *supra*.[5]  Indeed, the Government makes no argument that CoreCivic employees would be unwilling to testify, or that the Government would be, or has been previously, unable to compel CoreCivic employees to testify on matters relating to the individuals in CoreCivic's care.  Thus, the convenience to any CoreCivic employees and the availability of compulsory process should be considered neutral because it is not clear whether they will be necessary.

The Government also inflates the inconvenience associated with trying the case in this District by rattling off the names of hypothetical third-party witnesses that may or may not be unwilling to testify, and who may or may not have relevant knowledge.  For example, it mentions some 11 providers that administered care to Plaintiff while he was hospitalized at Banner Casa Grande Medical Center ("Casa Grande"), even though the complaint does not

---

[4]  According to CoreCivic's website, it operates the Otay Mesa Detention Center for ICE in San Diego, California, in addition to four other facilities in California.  *See* Cabañez Decl., Ex. A. CoreCivic is also registered to do business with the Secretary of State of California, maintains a registered agent for service of process in this state, and is thus subject to this Court's subpoena power.  *Id.*, Ex. B.  The Court may take judicial notice of these facts.  *See United States v. Perea-Rey*, 680 F.3d 1179, 1182 n.1 (9th Cir. 2012) (taking "judicial notice of a Google map and satellite image as a 'source[] whose accuracy cannot reasonably be questioned,' at least for the purpose of determining the general location" of a home); *YZ Productions, Inc. v. Teezily Inc.*, No. 2:24-cv-00223-MRA-SK, 2025 WL 1144825, at \*2 n.2 (C.D. Cal. Mar. 28, 2025) (taking judicial notice of Secretary of State filings).

[5] The Government's argument that LPCC is no longer under contract with ICE is misleading and irrelevant.  The facility is still owned and operated by CoreCivic, and CoreCivic is still a federal government contractor with respect to many other facilities.

allege that the care Plaintiff received at Casa Grande was insufficient.  The Government does not identify specific Casa Grande employees that would have had knowledge of the force-feeding incident at issue in this case, or that any provider at Casa Grande was consulted about any facts underpinning Plaintiff's claims.  The Government's assertion that some CoreCivic staff occasionally spoke with Casa Grande staff while Plaintiff was hospitalized there, without greater detail about the nature and relevance of their potential testimony, is a red herring.  This level of generality is functionally the same as not providing the names of any witnesses at all, which counsels against transfer.  *E.g.*, *Wilbur P.G.*, 2022 WL 3024319, at *3 (finding that the Government failed to "make its 'strong showing' that [the transferee district] is more convenient than [the forum district], because it has not identified witnesses and their anticipated testimony with particularity" (citation omitted)); *Visier, Inc. v. iCIMS, Inc.*, No. 24-cv-07544-SVK, 2025 WL 589036, at *3 (N.D. Cal. Feb. 24, 2025) (suggesting that moving party had a burden to identify third party witnesses, and explain the significance of their testimony).

Finally, "[a]bsent identification of any witnesses *who will testify or are unwilling to testify,* the availability of compulsory processes in each district is irrelevant." *Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs.*, No. 17-cv-6491-FMO, 2018 WL 7297829, at *3 (C.D. Cal. Sept. 30, 2018) (emphasis added); *see also*, *Perez v. Shippers Transp. Express, Inc.*, No. 13-cv-04255-BRO, 2014 WL 12597141, at *5 (C.D. Cal. July 8, 2014) (finding availability of compulsory process neutral when the moving party did not establish that compulsory process would be necessary).  Here, the Government fails to name any specific individual that it knows would be unwilling to testify in this case, rendering the question of compulsory process irrelevant to the convenience calculus.  *See* Dkt. 11 at 15-16.  And with such limited information about their relevant knowledge, it is impossible to determine the likelihood that any of these individuals will need to testify.

C.    **The Public Interest Factors Are Largely Neutral.**

1.    <u>This District's interest in the controversy is at least as significant as Arizona's.</u>

This District "has an interest in providing redress for its residents in response to alleged mistreatment." *Hinestroza v. United States*, No. 23-cv-2026-MWF-MRWx, 2023 WL 6787769, at *4 (C.D. Cal. Sept. 6, 2023). Indeed, both cases cited by the Government for the proposition that Arizona has a greater local interest in adjudicating this case actually support venue in the Northern District of California: Mr. Sayad lives in this District, but in the Government's cases, the plaintiffs lived in the transferee district. *See Canal A Media Holding, LLC*, 2018 WL 7297829, at *4 ("[G]iven that this case involves . . . a Florida resident—who is currently undergoing removal proceedings in Florida—the outcome of this case will principally affect residents of Florida"); *Sugarman v. Muddy Waters Cap. LLC*, No. 19-cv-04248-MMC, 2021 WL 583220, at *4 (N.D. Cal. Feb. 16, 2021) ("[T]he [transferee district] would have a significant interest in this case, given that all three plaintiffs . . . *are located there* and are alleged to have been harmed there." (emphasis added)). In contrast, as discussed *supra*, Plaintiff resides in this District and has no intention of leaving, meaning the lasting effects of the Government's abuse will continue to be felt in this District for the foreseeable future—and evidence of related treatment will be here, not in Arizona.

In addition, Plaintiff alleges abuse and neglect by federal employees, thus minimizing the local interest any one district may have in the controversy. When a case presents issues that are national in scope, "courts have held that consideration of the public interests do not warrant a transfer of venue." *A.F.P.*, 2022 WL 2704570, at *8 (citing *Alvarado*, 2017 WL 2303758, at *8). Indeed, courts in the Ninth Circuit have found that "[i]mmigration, and the treatment of those who have entered the United States without inspection is a matter of national concern." *Id.* (citing *Alvarado*, 2017 WL 2303758, at *8). Here, Plaintiff alleges that ICE officials violated his constitutional rights, failed to follow ICE's own detention guidelines, and failed to meet their duty in providing medically appropriate care to an individual detained under their supervision.

Compl. ¶¶ 29-32, 58, 102, 123. These issues are all national in scope, implicate nationwide policies, and thus outweigh any local interest the District of Arizona might have in adjudicating the dispute. At worst, this factor is neutral because both this District and the District of Arizona have an interest in preventing abuse and neglect by the federal government.

    2. <u>This Court is more than capable of applying out-of-state tort law.</u>

The fact that Arizona law applies to the underlying claims in this case should not weigh heavily in favor of transfer, as "this district is familiar with the FTCA and judges here routinely apply the laws of other states." *Wilbur P.G.*, 2022 WL 3024319, at *4. Courts in the Ninth Circuit generally view this factor as only slightly favoring transfer, especially when the claims at issue are not complex. See *Hinestroza*, 2023 WL 6787769, at *4 (finding familiarity with local law weighed slightly in favor of transfer); *A.F.P.*, 2022 WL 2704570, at *8 (holding this factor only slightly weighed in favor of transfer because "plaintiffs' state law tort claims . . . are not complex."). Plaintiff's claims are all based in common law tort theories, none of which raise any particularly complex nuances unique to Arizona law.

  **D.**  **Where the "Relevant Agreements Were Negotiated and Executed" is Not Relevant Here, and Should be Neutral.**

The Government mistakenly argues that the *Jones* factor relating to where relevant agreements are negotiated and executed favors transfer. Dkt. 11 at 21. Yet *Jones* is clear that this factor relates to contract formation, not performance. 211 F.3d at 498. This case does not sound in contract, and even if relevant contracts exist, the Government provides no information on where those contracts were formed. In fact, because CoreCivic is headquartered in Nashville, Tennessee, *see* Cabañez Decl., Ex. B, it is entirely possible that all contracts were negotiated and executed there or in Washington, D.C.

**VI.**  **CONCLUSION**

For the forgoing reasons, Plaintiff respectfully requests that the Court deny the Government's Motion to Transfer.

Dated: September 15, 2025          Respectfully submitted,


                                   By: */s/ Nicole Cabañez*

                                   Yaman Salahi (SBN 288752)
                                   yaman@salahilaw.com
                                   Nicole Cabañez (*pro hac vice*)
                                   nicolec@salahilaw.com
                                   **SALAHI PC**
                                   505 Montgomery St., 11th Floor
                                   San Francisco, California 94111
                                   Tel: (415) 236-2352

                                   *Attorneys for Plaintiff*