UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HAMAD SAYAD,

          Plaintiff,

    v.

UNITED STATES OF AMERICA,

          Defendant.

Case No. 25-cv-04679-TSH

**ORDER DENYING MOTION TO TRANSFER**

Re: Dkt. No. 11

## I.    INTRODUCTION

Plaintiff Hamad Sayad brings this Federal Tort Claims Act case based on his detention in Arizona by Immigration and Customs Enforcement.  Pending before the Court is the government's Motion to Transfer to the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 1404(a).  ECF No. 11.  Plaintiff filed an Opposition (ECF No. 16) and the government filed a Reply (ECF No. 26).   The Court finds this matter suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b) and **VACATES** the February 19, 2026 hearing.  For the reasons stated below, the Court **DENIES** the motion.[1]

## II.    BACKGROUND

Plaintiff is a Yemeni citizen who fled Houthi persecution in January 2020.  Compl. ¶ 1, ECF No. 1.  Upon entering the United States in December 2020, he was placed in Immigration and Customs Enforcement (ICE) detention until May 6, 2022, while his applications for asylum and Temporary Protected Status were pending.  *Id.*  During his detention, Plaintiff was primarily held at the La Palma Correctional Center (LPCC) in Eloy, Arizona, a facility owned and operated by CoreCivic.  *Id.*  He also spent time at another detention facility in Arizona, the Eloy Detention

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 9, 13.

Center (EDC). *Id.* ¶ 59. Plaintiff currently resides in the San Francisco Bay Area. *Id.* ¶ 5.

Plaintiff filed this case on June 3, 2025, alleging CoreCivic and ICE officials discriminated against him during his detention "by confiscating items necessary to practice his religion, improperly changing his detainee security status because of his religious expression, moving him to an inappropriate and unwarranted housing accommodation on that basis, and retaliating against him when he protested this discrimination." *Id.* ¶ 2. "Feeling that he had no other way to improve his living situation," in January 2022 Plaintiff went on an approximate two-month hunger strike at LPCC. *Id*. ¶ 3. He alleges a series of events related to inadequate medical care and other objectionable conduct during and after his hunger strike.

Plaintiff brings 15 claims under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), asserting each cause of action under Arizona law: (1) Negligent Placement in Segregated Confinement; (2) Negligence in Continuing to Segregate Plaintiff Against ICE Guidelines; (3) Negligent Administration of Force-Feeding Procedure; (4) Negligence in Failing to Transfer Plaintiff to a Properly-Equipped Facility; (5) Negligence in Failing to Provide Emergency Health Services; (6) Negligent Infliction of Emotional Distress; (7) Negligent Supervision; (8) False Imprisonment; (9) Abuse of Process; (10) Intentional Infliction of Emotional Distress; (11) Battery; (12) Medical Battery; (13) Aiding and Abetting Battery; (14) Assault; and (15) Civil Conspiracy. Compl. ¶¶ 71-185.

The government filed the present motion on August 11, 2025, arguing Plaintiff's case should be transferred to the United States District Court for the District of Arizona because his detention at facilities in Arizona inform the entirety of his 15 causes of action based on Arizona law, the witnesses with firsthand knowledge of this conduct are in Arizona and outside the compulsory process of this District, the records of the detention facilities and the hospital where he received additional care are also outside the subpoena power of this Court, and none of the actionable conduct challenged in Plaintiff's complaint occurred in this District.

### III.    LEGAL STANDARD

The FTCA provides an avenue for individuals to sue the federal government for conduct that constitutes a tort under state law. The applicable substantive state law is "the law of the place

2

United States District Court
Northern District of California

where the act or omission occurred." 28 U.S.C. § 1346(b)(1).  Venue for an FTCA claim is governed by 28 U.S.C. § 1402(b), which permits such a claim to be prosecuted "in the judicial district where the claimant resides or where the act or omission occurred." *Id.* § 1402(b).  A court may transfer an action to another district "where it might have been brought" "[f]or the convenience of parties and witnesses, in the interest of justice." *Id.* § 1404(a); *see also Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) ("[A] district court considering a § 1404(a) motion . . . must evaluate both the convenience of the parties and various public-interest considerations.").  The purpose of this statute is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks omitted).

The moving party bears the burden of showing that the transferee district is a "more appropriate forum." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000).  District courts engage in a two-step analysis for motions to transfer.  First, they determine "whether the transferee district was one in which the action might have been brought by the plaintiff." *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960) (internal quotation marks omitted).  If so, the courts engage in "an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, (1988) (internal quotation marks omitted).  In this District, courts typically consider the following factors:

> (1) plaintiffs' choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time to trial in each forum.

*Ironworks Pats. LLC v. Samsung Elecs. Co.*, 2017 WL 3007066, at *2 (N.D. Cal. July 14, 2017) (collecting cases).  "This list is non-exclusive, and courts may consider other factors, or only those factors which are pertinent to the case at hand." *Martin v. Glob. Tel*Link Corp.*, 2015 WL 2124379, at *2 (N.D. Cal. May 6, 2015).

The district court has broad discretion in deciding whether transfer is appropriate. *See*

3

*Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007) ("[T]he district court's decision to change venue is reviewed for abuse of discretion. Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge.") (citation and internal quotation marks omitted).

## IV.    DISCUSSION

### A.    Whether Action Could Have Been Brought in Arizona

Plaintiff does not dispute that this action could have been brought in Arizona. *See* Opp'n at 3-4 (citing 28 U.S.C. § 1402(b)). The Court agrees that venue would be proper in the District of Arizona, as that is where the alleged tortious acts or omissions occurred. *See Barroca v. United States*, 2019 WL 5722383, *3 (N.D. Cal. Nov. 5, 2019) (granting motion to transfer venue under § 1404(a) in FTCA case where majority of allegations in complaint occurred in the transferee state).

### B.    Plaintiff's Choice of Forum

"[A] plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981); *see also Wilbur P.G. v. United States*, 2022 WL 3024319, at *3 (N.D. Cal. May 10, 2022) (denying the government's motion to transfer FTCA case to the District of Arizona in part because "Plaintiffs reside in the Northern District of California and chose to file their case here.").

There is no dispute Plaintiff resides in this District, but the government argues that any deference to Plaintiff's choice of forum is substantially reduced because the alleged facts occurred in Arizona. Reply at 2-3. The government is correct that a plaintiff's forum choice is given substantially less weight when the central dispute in the action occurred primarily in another forum and lacks any significant contact with the forum. *See Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968) ("If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration."). Here, the only connection to California is that Plaintiff now resides in this District. None of the alleged acts took place here, and Plaintiff did not live in California when they occurred. Therefore, the Court finds Plaintiff's choice of forum should be accorded diminished weight. *See Saleh v. Titan Corp.*, 361 F. Supp. 2d

United States District Court
Northern District of California

1152, 1157 (S.D. Cal. 2005) (collecting cases in which "courts have given less deference to the plaintiff's choice of forum where the action has little connection with the chosen forum."); *Rogers v. United States*, 2015 WL 8479065, at *4 (D. Ariz. Dec. 10, 2015) (granting motion to transfer from District of Arizona where "[t]he only connection that this case has to Arizona is that plaintiff happened to move there sometime after the events upon which his claims are based occurred").

## C.    Convenience of the Parties

"Transfer is not appropriate when it merely shifts the burden of litigating in a distant or otherwise disfavored forum from the defendant to the plaintiff." *A.F.P. v. United States*, 2022 WL 2704570, at *5 (E.D. Cal. July 12, 2022) (citing *Mitchell v. 1Force Gov't Sols., LLC*, 2018 WL 6977476, at *4 (C.D. Cal. Nov. 29, 2018)).

The government argues litigating this action here would be much more expensive because "if this case proceeds past the motion-to-dismiss stage, a significant amount of discovery *for both parties* will concern LPCC, EDC and Casa Grande, where Plaintiff was detained and received medical treatment. Conducting any site visits, meeting with witnesses, flying back and forth from California to Arizona while accommodating witness, site and attorney time will entail substantial costs." Mot. at 18 (emphasis in original). Plaintiff counters that transfer "would severely inhibit, if not functionally prohibit," his ability to bring this case. Opp'n at 4. Plaintiff notes he is low-income, earning approximately $500 to $600 per week as a grocery delivery driver, and he has little in savings. Sayad Decl. ¶ 12, ECF No. 17. He does not receive paid time off or paid vacation days at work, meaning taking time off work to travel to Arizona for this case would require foregoing income for those days, in addition to paying any expenses associated with travel. *Id*. He maintains it would be extremely difficult for him to afford a single trip to Arizona, both in terms of lost income and the expense of paying for travel and lodging to testify. *Id*. ¶ 16.

The Court finds that transferring this action to the District of Arizona would merely shift the burden from the government to a plaintiff of limited means. "Under these circumstances of significant disparity between the means of the parties, plaintiffs' choice of venue should be left undisturbed." *A.F.P.*, 2022 WL 2704570, at *6 (cleaned up) (denying government's motion to transfer from California to Texas, where nearly all the facts at issue arose, because plaintiffs

United States District Court
Northern District of California

resided in California "and would experience significant hardship if they were to litigate this case in Texas") (citing *Flores v. United States*, 142 F. Supp. 3d 279, 288 (E.D.N.Y. 2015) and *Pizana v. SanMedica Int'l LLC*, 2020 WL 469336 at *4 (E.D. Cal. Jan. 29, 2020) (courts must "be careful to avoid a transfer that 'would merely shift rather than eliminate' the inconvenience of costs.")); *see also Wilbur P.G.*, 2022 WL 3024319, at *3 (denying the government's motion to transfer FTCA case to the District of Arizona because "adjudicating the case in the Northern District is most convenient for the parties since Plaintiffs reside here.").

Because Plaintiff resides in California and would experience significant hardship if he were to litigate this case in Arizona, the convenience of parties and the relative means of the parties weigh strongly against transfer.

**D.    Convenience of the Witnesses**

"The convenience of the witnesses, particularly non-party witnesses, is often the most important factor" in ruling on a motion to transfer venue under § 1404(a).  *Grossman v. Johnson & Johnson*, 2015 WL 1743116, at *1 (N.D. Cal. Apr. 13, 2015) (collecting cases); *Saleh*, 361 F. Supp. 2d at 1160 ("'While the convenience of party witnesses is a factor to be considered, the convenience of non-party witnesses is the more important factor.'") (quoting *Aquatic Amusement Assocs., Ltd. v. Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D.N.Y. 1990)).  To show inconvenience for witnesses, "the moving party should state the witnesses' identities, locations, and content and relevance of their testimony."  *Meyer Mfg. Co. Ltd. v. Telebrands Corp.*, 2012 WL 1189765, at *6 (E.D. Cal. Apr. 9, 2012) (citing *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1092–93 (N.D. Cal. 2002)); *see also E. & J. Gallo Winery v. F. & P. S.p.A.*, 899 F. Supp. 465, 466 (E.D. Cal. 1994) ("Affidavits or declarations are required to identify key witnesses and a generalized statement of their anticipated testimony.").

The government argues this factor favors transfer because "Arizona is the location for virtually all of the witnesses with percipient knowledge of the operative facts."  Mot. at 15.  It maintains "there are many Arizona witnesses who will provide testimony regarding the sufficiency of Plaintiff's medical care," including the Chief Medical Officers for CoreCivic at the two Arizona facilities—Dr. David Robertson and Dr. Keith Ivens—who supervised and provided care for

6

Plaintiff. *Id.* "There also are over a dozen other members of LPCC's medical staff who are witnesses about the adequacy of Plaintiff's medical care and whether best medical practices were being followed: Kirk Weddle, R.N., Shelly Mueller, R.N., Theodore Carey, R.N., Jessica Prinz, R.N., Benjamin Pierce, R.N., Jeris Ruehrup, R.N., Tracy Rascon, R.N., Jeri Garcia, N.P., Angela Andrade, Aminu Zakari, PA-C, Katherine Hakeman, Cora Johnson, Deborah Walbert and Kamal Rastogi, M.D." *Id.* "And there are at least a half dozen members of the Casa Grande medical staff who provided various services to Plaintiff—encompassing general medical, laboratory, tomography, radiology and psychology services—in conjunction with his treatment at LPCC." *Id.* The government notes Plaintiff himself names Dr. Robertson as an important witness regarding the sufficiency of his treatment during his hunger strike. *Id.* at 16 (citing Compl. ¶¶ 47, 50). It notes Plaintiff also refers to numerous witnesses on the ground in Arizona as having been involved in his treatment, including the medical staff at LPCC (*see* Compl. ¶¶ 47, 51, 53-54, 56); "ICE or any CoreCivic employee[s] involved in ongoing care relating to diet and refeeding protocols (*id*. ¶ 46-49); "ICE officials" at the LPCC detention facility who were involved in medical monitoring and intervention (*id*. ¶¶ 42); and individuals at EDC with knowledge of that facility's laboratory and dietary services and medical care generally (*id*. ¶¶ 59, 61). Mot. at 16. The government also points to other percipient witnesses in Arizona that Plaintiff refers to in his complaint. *Id.* at 16-17 (citing Compl. ¶¶ 29, 32, 35-37, 41, 44, 50-51, 53-55, 74). Finally, the government argues that "most of these witnesses are non-party witnesses that are outside this Court's subpoena power" and "the fact that a party will not be able to compel third-party witnesses is a significant consideration in the transfer analysis." *Id.* at 17.

Plaintiff does not dispute that many of the likely witnesses in this case are based in Arizona, but he argues that he is also likely to call, and the government is likely to seek discovery from, several California-based witnesses, including mental health and medical professionals, who have provided treatment to him since his release. Opp'n at 9. Plaintiff himself also intends to testify and attend trial. Sayad Decl. ¶ 16. Plaintiff also argues that "many of the critical allegations in the complaint concern actions by ICE officials, employees, and independent contractors," and that "both facilities at issue in this case are owned and operated by CoreCivic, an

entity that is currently under contract with ICE to provide detention services around the country, including in California.  This means that much of the information in CoreCivic's possession should also be within the Government's possession, custody, or control, given that CoreCivic likely has contractual obligations to the Government to facilitate its access to information and to cooperate in related civil litigation." Opp'n at 9-10.

The Court finds Plaintiff's arguments are persuasive.  Although the government correctly notes the complaint alleges wrongdoing by detention facility employees, the complaint also alleges wrongdoing by ICE officials.  "As federal employees, these witnesses may be compelled to testify in this court by the government, and any inconvenience to them may be discounted." *A.F.P.*, 2022 WL 2704570, at *7 (citing *Getz v. Boeing Co.*, 547 F. Supp. 2d 1080, 1084 (N.D. Cal. 2008) (Courts "discount[ ] any inconvenience to the parties' employees, whom the parties can compel to testify.")); *see also Wilbur P.G.*, 2022 WL 3024319, at *3 ("Courts in this district have found that 'the convenience of a litigant's employee witnesses are entitled to little weight because litigants are able to compel their employees to transfer at trial, regardless of forum.'") (collecting cases and quoting *Alul v. Am. Honda Motor Co., Inc.*, 2016 WL 7116934, at *4 (N.D. Cal. Dec. 7, 2016)).  With respect to non-party witnesses such as government contractors, the parties "can utilize videotaped depositions in lieu of live testimony, or arrange for live testimony by video, lessening the burden on the witnesses." *Flores*, 142 F. Supp. 3d at 288 (citing *JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*, 960 F. Supp. 2d 383, 399 (E.D.N.Y. 2013)).  Furthermore, as Plaintiff has noted, he himself will need to be present and will almost certainly testify, and he has submitted a declaration describing both the financial and mental health hardships he would suffer should this action be transferred to the District of Arizona.  Sayad Decl. ¶¶ 5, 7, 12.  "It would be inappropriate to shift the burden to [him] and force [him] to choose between traveling to [Arizona] at the expense of [his] health or appearing at [his] trial by video." *Flores*, 142 F. Supp. 3d at 288; *A.F.P.*, 2022 WL 2704570, at *7 (same).

Accordingly, the Court concludes that consideration of witness convenience does not weigh in favor of transferring venue.

United States District Court
Northern District of California

### E.      Ease of Access to the Evidence

The government argues this factor favors transfer because most of the records concerning Plaintiff's medical care and treatment are maintained in Arizona, and many of Plaintiff's detention records would be similarly maintained by those CoreCivic facilities and employees in Arizona. Mot. at 19.  The government also argues: "The fact that LPCC, EDC, CoreCivic and Casa Grande are all third parties underscores the heightened difficulty of discovering their records since they are outside this Court's subpoena power.  Indeed, LPCC—where Plaintiff acknowledges that he spent his detention during the relevant time period—is no longer an ICE subcontractor." *Id.* However, the location of records "is also not decisive to resolution of the pending motion because documentary evidence related to this case can be reproduced and transmitted electronically to this court." *A.F.P.*, 2022 WL 2704570, at *7; *Williams v. Robert Half Int'l Inc.*, 2020 WL 12655622, at *3 (N.D. Cal. Sept. 18, 2020) ("in the digital age, the access to records is neutral given the portability of documents."); *Panavision Int'l, LP v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) (The location of evidence "is no longer weighed heavily given the modern advances in communication and transportation.").

Further, it is not uncommon for depositions to take place virtually or be recorded via video. *See Wilbur P.G.*, 2022 WL 3024319, at *3 ("[D]iscovery may be more challenging because the detention facilities are located in Arizona, but the undersigned is confident that the parties will utilize the technology at their disposal, including depositions by video conference, to fulfill their obligations.").  Plaintiff states his counsel intends to work with the government to assess the feasibility of remote depositions whenever it would be practicable to do so.  Opp'n at 9.  Courts in this District have found these types of assurances sufficient to find this factor neutral.  *See Abeyta v. DMCG, Inc.*, 2023 WL 2918741, at *6 (N.D. Cal. Apr. 12, 2023).  The same can be said of trial testimony, because this case will be tried by the Court, not a jury.  *See* 28 U.S.C. § 2402. Accordingly, the Court finds this factor is neutral.

### F.      Familiarity of Each Forum with the Applicable Law

The fifth factor, familiarity with governing law, favors transfer because Plaintiff's claims will be decided under Arizona law.  *See Tekle v. United States*, 511 F.3d 839, 853 (9th Cir. 2007)

(providing federal courts, "in assessing the United States' liability under the FTCA, . . . are required to apply the law of the state in which the alleged tort occurred." (internal bracket omitted)). However, the Court observes that Plaintiff's "state law tort claims, which sound in common law negligence, are not complex." *A.F.P.*, 2022 WL 2704570, at *8 (citing *Certain Underwriters at Lloyd's London v. Nat'l R.R. Passenger Corp.*, 2015 WL 1182764, at *4 (E.D.N.Y. Mar. 13, 2015) ("Federal courts are deemed capable of applying the law of other states."). This Court can certainly ascertain Arizona law with the assistance of counsel. Accordingly, the Court concludes that consideration of this factor weighs only slightly in favor of transfer.

## G.      Feasibility of Consolidation with Other Claims

This factor is not relevant and is therefore neutral.

## H.      Any Local Interest in the Controversy

Courts also consider the "local interest in deciding local controversies." *Perez v. Performance Food Grp., Inc.*, 2017 WL 66874, at *4 (N.D. Cal. Jan. 6, 2017) (collecting cases). Plaintiff's allegations focus on the conduct of government and government contractors operating in the District of Arizona, detention facilities operating in its state, and the provision for medical and other treatment in those Arizona facilities. The government argues Arizona's interest is heightened given the nature of Plaintiff's allegations related to his treatment during his hunger strike and the District of Arizona's interest in ensuring that its court-ordered care was performed properly and in accordance with generally accepted medical practices. Mot. at 22. Specifically, it notes that on February 18, 2022, ICE initiated a lawsuit in the District of Arizona, seeking injunctive relief to allow the government to administer involuntary medical care to Plaintiff. *See United States v. Sayad*, Case No. 2:22-cv-00270-DLR (D. Az).[2] The Arizona District Court entered a temporary restraining order (TRO) on the same day, which provided that "the Department of Homeland Security, through competent medical personnel, may administer

---

[2] A court may "take judicial notice of undisputed matters of public record, including documents on file in federal or state courts." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citation omitted).

10

involuntary hydration, and perform medical examinations, weight checks, monitor vital signs, and collect blood and urine samples for analysis of [Plaintiff] and may restrain him if he resists these necessary medical measures." *Id.*, ECF No. 6; *see* Compl. ¶ 43 (Plaintiff's suggestion that the court-ordered feedings were not performed "through competent personnel" as provided in the TRO); *id.* ¶ 100 (alleging as a basis for Plaintiff's Third Claim for Relief—for "Negligent Administration of Force-Feeding Procedure—that "LPCC staff were misusing the TRO to threaten and bully [Plaintiff] into consuming food when it was not medically necessary or safe to do so"). As such, the government argues Arizona has the greater interest in keeping the people located in that District safe from alleged government wrongdoing. Mot. at 22 (citing *Canal A Media Holding, LLC v. United States Citizenship & Immigration Servs.*, 2018 WL 7297829, at *4 (C.D. Cal. Sept. 30, 2018) (finding that the transferee district "has a great interest in protecting its citizens from the unreasonable actions of a government agency") (internal citations and quotations omitted)).

In response, Plaintiff argues "[t]his District 'has an interest in providing redress for its residents in response to alleged mistreatment.'" Opp'n at 12 (quoting *Hinestroza v. United States*, 2023 WL 6787769, at *4 (C.D. Cal. Sept. 6, 2023)). Plaintiff also argues local interest is minimized because he alleges abuse and neglect by federal employees. *Id.*

Although the District of Arizona certainly does have a local interest in this action, Plaintiff alleges misconduct and mistreatment by the federal government, "giving rise to a national interest in the matters to be litigated." *Flores*, 142 F. Supp. 3d at 291. Plaintiff was apprehended by federal officers, held in federal detention centers, and alleges mistreatment by federal officers in violation of federal policies. "It has been recognized that '[i]mmigration, and the treatment of those who have entered the United States without inspection is a matter of national concern.'" *A.F.P.*, 2022 WL 2704570, at *8 (quoting *Alvarado v. United States*, 2017 WL 2303758, at *8 (D.N.J. May 25, 2017)). "Furthermore, while the [District of Arizona] may have a special interest in the integrity of the procedures and processes employed by that court and implicated by [Plaintiff's] allegations, the integrity of courts is an interest shared equally by all federal courts, including this one. When issues are national in scope, courts have held that consideration of the

United States District Court
Northern District of California

public interests do not warrant a transfer of venue." *Id*. (citing *Alvarado*, 2017 WL 2303758, at *8). Accordingly, the Court finds this factor is neutral.

**I.      Relative Court Congestion and Time to Trial in Each Forum**

In the exercise of its discretion, the Court omits consideration of this factor "for reasons of policy and pragmatism." *Ironworks Pats. LLC*, 2017 WL 3007066, at *2 (citing *Perez*, 2017 WL 66874, at *2 n.5 ("The Court does not compare the court congestion and time of trial in the two districts because ongoing application of this doctrine could have the unintended consequence of penalizing efficiency by effectively placing more cases in the districts with the shortest time to trial. In addition, the Court is somewhat skeptical of the ability of the Court or the parties to accurately and meaningfully capture these metrics as of today, which is the only timeframe that matters for this purpose.").

**J.      Balancing of Discretionary Factors**

Having considered the relevant factors, the Court concludes that the government has failed to satisfy its burden of demonstrating that a transfer would promote the convenience of parties and witnesses or would be in the interests of justice. The Court affords Plaintiff's chosen forum great weight. He lives in this District and his limited means would make it difficult for him to effectively litigate this case in the District of Arizona. The availability of video testimony or depositions in lieu of live testimony and the ease with which documentary evidence can now be transferred eliminates any substantial burden that might be imposed on witnesses and the parties by trying this action in the Northern District of California.

**V.      CONCLUSION**

For the reasons stated above, the Court **DENIES** Defendant's motion to transfer venue.

**IT IS SO ORDERED.**

Dated: February 6, 2026

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California

12